## WHITCOMB v. EMERSON et al.

*(District Court, D. Massachusetts. April 12, 1892.)*

1. LIMITATION OF LIABILITY—FISHING VESSEL—"FREIGHT PENDING"—SEASON'S CATCH.
   In the case of a fishing vessel run under an agreement by which the cost of repairs is deducted from the proceeds of the entire catch before division, a season's cruising is to be counted as a single voyage, and the earnings for the whole season's fishing are, equally with the vessel, liable for the cost of repairs contracted on the vessel's account. Hence, when such vessel was wrecked, and her owners, on suit by a material-man, claimed to limit their liability to the value of the wreck, *held*, that their liability was measured by the season's earnings added to the value of the wreck.

2. SAME—PART OWNERS—"PRIVITY OR KNOWLEDGE"—ACT JUNE 26, 1884.
   Where repairs were ordered by a ship-master, who was also one of three equal part owners of a vessel, without the privity or knowledge of the other owners, *held*, that the master was liable for the whole debt, and the other two owners were each liable for one-third of it, under Act June 26, 1884, § 18.

In Admiralty. Libel to recover the value of repairs furnished to respondents' vessel.

*Carver & Blodgett*, for libelant.

*Owen A. Galvin*, for respondents.

NELSON, District Judge. This case is a libel *in personam* by a material-man to recover $165.35 for repairs furnished to the fishing schooner William Emerson, owned in equal shares by the three respondents, Emerson, Whalen, and Rhoderick. The repairs were furnished in the months of January and February, 1890, at Provincetown, on the credit of the vessel, to fit her for shore fishing during the coming season, and were necessary. After being fitted out, the vessel cruised during the entire season, making numerous trips, and selling her fares in the Boston market. The proceeds were divided between the owners and sharesmen according to what is known as the "Provincetown lay," by which the costs of repairs is included in the great generals, and deducted from the entire catch in the first instance, before division. At the close of the season the vessel was sent to Provincetown, to be laid up for the winter, her value then being $5,000. Instead of laying her up, as directed by Emerson, who was the managing owner, the respondent Rhoderick took her out on a fishing trip, and while out she was wrecked on Cape Cod. The wreck was sold for $303.50. Other debts to a considerable amount are also outstanding against the vessel.

The act of June 26, 1884, (23 St. p. 57,) provides "that the individual liabilities of a ship-owner shall be limited to the proportion of any and all debts and liabilities that his individual share of the vessel bears

to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending." By the act of June 18, 1886, § 4, (24 St. p. 80,) this section, and also sections 4282–4288 of the Revised Statutes, which contain other provisions for limiting the liabilities of ship-owners, are extended to all sea-going vessels, and this includes fishing vessels. The respondents Emerson and Whalen now offer to pay into court the sum of $303.50, received from the sale of the wreck, and claim that upon such payment they should be exempted from further liability for all the debts of the vessel. But it is clear that this claim cannot be maintained. Their offer makes no allowance for the fares of fish caught and sold during the season. By the terms of the fishing contract, the cost of repairs should have been deducted from the proceeds of the fish caught and sold, and if this was not done, it was through no fault of the libelant. The season's cruising is to be counted as a single voyage, and the earnings during the whole season's fishing are, equally with the vessel, liable for debts contracted on the vessel's account. The amount of the earnings does not appear, and they must be presumed to exceed the debts. As there is no offer to pay the earnings into court, or to apply them to the payment of the debts, there is no exemption from liability from the debts under the statutes referred to.

It appears that the repairs were furnished upon the order of Rhoderick alone, who was also the master, without the privity or knowledge of the other owners, and not under any contract with them, except so far as the master had implied authority to bind them as part owners for necessaries. As the liability of Emerson and Whalen for the repairs arises solely from their ownership of two-thirds interest in the vessel, and not on account of their personal intervention, the liability of each is limited to one-third of the debt, by section 18 of the act of 1884. *The Amos D. Carver*, 35 Fed. Rep. 665; *McPhail* v. *Williams*, 41 Fed. Rep. 61.

The libelant is entitled to a decree for the whole debt against Rhoderick, and for one-third of the debt against Emerson and Whalen, respectively, with costs; and it is so ordered.